36 F.3d 1106
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, for and on behalf of R & R
Mechanical, Inc., a Utah corporation,
Plaintiff-Third-Party Defendant,
and
R & R MECHANICAL, INC., on its own behalf, Plaintiff-Appellant,
v.
ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a Minnesota
corporation, and Big D Construction Corporation, a
Utah corporation, Defendants-Third-Party
Plaintiffs-Appellees.
 Nos. 93-4004, 93-4013.
 United States Court of Appeals, Tenth Circuit.
 Sept. 15, 1994.
 ORDER AND JUDGMENT*
 
 1
 Before MOORE and SETH, Circuit Judges, and DAUGHERTY, District Judge**.
 
 
 2
 Plaintiffs R & R Mechanical, Inc. ("R & R") and the United States of America, for and on behalf of R & R, filed suit under the Miller Act, 40 U.S.C. 270a-270d, against Defendants Big D Construction Corporation ("Big D") and its surety St. Paul Fire and Marine Insurance Company, claiming among other things that Big D improperly refused to pay for an alleged change order. Although the United States District Court for the District of Utah ruled in favor of Plaintiffs on most of their claims, the court held that R & R failed to utilize the appropriate method for presenting its change order claim directly to Big D and that it had acquiesced to the alleged change in work; therefore, the court ruled against Plaintiffs on this issue. This appeal followed concerning the change order claim.
 
 
 3
 Initially, we must decide Appellees' Motion to Dismiss for failure of Appellant to timely file its notice of appeal. The pertinent dates and events are as follows:
 
 
 4
 1. August 26, 1992 Final judgment entered;
 
 
 5
 2. September 8, 1992 Motion for Reconsideration filed;
 
 
 6
 3. November 6, 1992 Motion denied;
 
 
 7
 4. December 31, 1992 Appellant's Notice of Appeal filed;
 
 
 8
 5. January 15, 1993 Motion to Correct Notice of Appeal or
 
 
 9
 Alternatively Extend Time filed;
 
 
 10
 Corrected Notice of Appeal docketed.
 
 
 11
 Although there is some dispute over the correct date of the entry of final judgment, we will assume that date to be August 26, 1992 as recited above. Furthermore, we agree with Appellant that its Motion for Reconsideration ("Motion") was filed within the appropriate time limit set forth in Fed.R.Civ.P. 6. Since the original ten-day period for filing the Motion would have ended on a Saturday and the following Monday was Labor Day, Tuesday, September 8, 1992, became the last day of the Rule 6 period. Consequently, the Motion was timely filed and tolled the period for filing the Notice of Appeal ("Notice") until sixty days after the Motion was denied.
 
 
 12
 The question then becomes whether Appellant properly filed its Notice within the sixty-day period. It is uncontested that Appellant filed the first Notice on December 31, 1992, well within the sixty-day period. Although the caption on the Notice was correct, the Appellant mistakenly stated in the body of the Notice that "Defendant, St. Paul Fire," was appealing. Other than this error, the Notice was properly filed and served on Appellees.
 
 
 13
 Upon learning of the error, Appellant filed a Corrected Notice of Appeal ("Corrected Notice") and a timely Motion to Correct Notice of Appeal or Alternatively Extend Time ("Motion to Correct") on January 15, 1993. After a hearing, the district court ruled that "excusable neglect exists because the record reflects substantial good faith efforts to comply, including recognition of the time limit for filing appeals, completion and service of the Notice and timely effort pursuant to Rule 4(a)(5) F.R.A.P. to correct the error." Furthermore, the court found that there would be no prejudice or delay by permitting the Corrected Notice to be filed and that concurrent documents were timely filed which indicated the proper party as Appellant. Consequently, the court allowed Appellant to file the Corrected Notice.
 
 
 14
 Fed. R.App. P. 4(a)(5) empowers the district court to extend the time for filing a notice of appeal if there is a showing of excusable neglect or good cause. In this case we are concerned with the excusable neglect standard. This term is construed based on the "common-sense meaning of the two simple words applied to the facts which are developed." Buckley v. United States, 382 F.2d 611, 614 (10th Cir.). "A district court's determination of excusable neglect will be reversed only for a clear abuse of discretion." Romero v. Peterson, 930 F.2d 1502, 1505 (10th Cir.). In making this determination, the court "may consider all relevant factors." United States v. Lucas, 597 F.2d 243, 245 (10th Cir.).
 
 
 15
 Appellees argue that the original faulty Notice amounted to no more than a "clerical error" that many courts have refused to accept as "excusable neglect." State of Oregon v. Champion Int'l Corp., 680 F.2d 1300 (9th Cir.); Gooch v. Skelly Oil Co., 493 F.2d 366 (10th Cir.). The cases cited in Appellees' brief are similar in that "clerical errors" caused the notices of appeal to be filed after the appropriate period of time had run. In this case the Notice was filed before the period had run, and Appellant diligently attempted to correct the faulty Notice as soon as it became aware of its flaw. Based on this crucial distinction and the other factors enumerated by the district court, we cannot find that the court clearly abused its discretion by granting Appellant's Motion to Correct. See Romero, 930 F.2d at 1504-05; Consolidated Freightways Corp. of Del. v. Larson, 827 F.2d 916 (3d Cir.).
 
 
 16
 As to the merits of this appeal, the salient facts are summarized as follows. Big D was hired by the United States Army Corps of Engineers as the general contractor for the construction of a Logistic Systems Operations Center in Utah. Big D and R & R entered into a written subcontract under which R & R was to perform as the mechanical contractor. A part of R & R's job was to install underground utility lines. In order to do so, R & R had to excavate trenches to a certain specified depth. A component of any excavation is a determination of the safe angle of repose.
 
 
 17
 The angle of repose is the "greatest angle above the horizontal plane at which a material will lie without sliding." 29 C.F.R.1926.653(b). The purpose of the angle of repose is to protect persons and equipment located in a trench from sliding material. Neither the contractual documents nor the competitive bid instructions included a precise angle of repose. Rather, the subcontract incorporated the Corps safety manual which in turn required R & R to submit a hazard analysis form prior to beginning any major phase of work. Although there is some dispute, it appears that about the time that R & R began excavation in the fall of 1987, R & R prepared a hazard analysis form ("Form") in which R & R proposed to excavate the trenches with a forty-five degree angle of repose. Subsequently, the parties met in order to discuss the Form. At this meeting, Bill Hendrickson of the Corps indicated that he had performed a rough field test and that based on the test he felt a thirty-degree angle of repose was appropriate. After some discussions, Ron Olsen, a principal of R & R, scratched out the forty-five degree angle of repose language on the Form and initialed the change to a thirty-degree angle of repose.
 
 
 18
 Work continued briefly after this meeting until it was suspended for the winter. After work resumed in the early spring, R & R and Big D had several altercations over the angle of repose. These disputes culminated with Ron Olsen's being asked to leave the project temporarily because he refused to excavate at the thirty-degree angle.
 
 
 19
 Sometime in July 1988, R & R hired an independent soil geologist who conducted an in-depth geological survey and concluded that a forty-five degree angle of repose was sufficient under the existing conditions. Thereafter, all of the parties again met to discuss the angle of repose. Ultimately, the Corps changed its position and acknowledged that either a thirty-five or forty-five degree angle of repose was appropriate depending on the conditions. However, by this time almost all of the work on R & R's subcontract was completed.
 
 
 20
 It was not until November 2, 1988, approximately a year after Ron Olsen initialed the modification to the Form, that R & R filed its first change order request in which R & R desired payment for costs incurred to excavate the trenches at the thirty-degree angle as opposed to a forty-five degree angle. This request was denied, and R & R filed the lawsuit underlying this appeal.
 
 
 21
 The district court ruled in Finding of Fact No. 7 that:
 
 
 22
 "[u]nder the original subcontract, R & R was to slope back the sides of the utility trenches. R & R acquiesced in the requirement of the Corps that the slopes of its utility trenches be sloped back to thirty degrees. It did so when Ronny Olsen, an officer of R & R, initialed the Hazard Analysis document to provide for a thirty degree angle of repose."
 
 
 23
 Findings of Facts and Conclusions of Law, p. 2. The court also ruled that R & R did not follow the proper procedures for presenting its claims as provided for in the subcontract. Appellant disagrees with both of these findings.
 
 
 24
 We review a district court's findings of fact for clear error and its conclusions of law de novo. Pierce v. Underwood, 487 U.S. 552, 558. Because we agree with the court that R & R acquiesced to the thirty-degree angle, we do not reach Appellant's other claims.
 
 
 25
 What is critical to Appellant's claim for relief is that there be a change order, i.e., a change in work not contemplated in the subcontract that would consequently permit R & R to seek recompense for the additional work caused by the change.
 
 
 26
 Appellant argues that when R & R submitted its bid, it contemplated that a forty-five degree angle of repose would be imposed and therefore Mr. Hendrickson's directive to excavate at thirty degrees was a change in work. In particular, Appellant focuses on the heated discussions that occurred between the parties in early spring 1988 in which Mr. Hendrickson and Big D told R & R to excavate at thirty degrees or leave the project site. Appellant contends that this amounted to a coerced acquiescence and a change in work. We disagree.
 
 
 27
 It is undisputed that the bid instructions and subcontract did not specify the precise angle of repose. Moreover, there is no evidence in the record indicating that Big D knew or should have known that R & R calculated its bid under the assumption that a forty-five degree angle was adequate. Furthermore, the contract explicitly states that "[a]ll work is to be furnished in strict accordance with plans and specifications as prepared by ... the U.S. Army Corps of Engineers." The logical conclusion is that the parties contemplated at the time of contracting that an appropriate angle of repose would be established at a later time by the Corps. Thus, we conclude that no specific angle of repose, whether forty-five or thirty degrees, was a part of the subcontract. It follows that when Mr. Hendrickson informed R & R that a thirty degree angle was required, he was merely utilizing his contractual authority to set the angle of repose.
 
 
 28
 We agree with Appellant that the angle of repose must be reasonable and that defective specifications may constitute a breach of contract. See W.F. Magann Corp. v. Diamond Mfg. Co., Inc., 775 F.2d 1202 (4th Cir.). However, we disagree with its assertions that Mr. Olsen's initialing the Form is essentially immaterial and is merely the first indication of a disagreement between R & R and Big D and the Corps. The district court explicitly found that Mr. Olsen acquiesced to the thirty-degree angle when he altered and initialed the Form. We can find no error in such a conclusion. Consequently, when Mr. Hendrickson and Big D told R & R to excavate at thirty degrees in the spring of 1988, they were not effecting a change in work but rather were merely trying to enforce the agreed upon angle of repose that was properly imposed under the subcontract.
 
 
 29
 We note that Mr. Olsen and R & R could have taken immediate steps to prove that the thirty-degree angle was unreasonable and not contemplated by R & R in its bid. However, Mr. Olsen acknowledged the thirty-degree angle in the Form, and R & R began to work on the project without the slightest indication that it would seek a change order. In fact, the written request for a change order was not submitted to Big D until November 1988, approximately one year after Mr. Olsen initialed the Form. To permit R & R to recover for an alleged change in work to which it acquiesced over a year before would be inequitable.
 
 
 30
 Based on the foregoing, we AFFIRM the district court's decision concerning the angle of repose and therefore do not reach the other issues presented on appeal.
 
 
 
 *
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 **
 Honorable Frederick A. Daugherty, United States District Judge for the Western, Northern, and Eastern Districts of Oklahoma, sitting by designation